UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE ANN BENDER, | ) | CASE NO. 11-CV-1546 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE MCHARGH |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | | |

This case is before the Magistrate Judge pursuant to the Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Christine Ann Bender's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, and Supplemental Security Income benefits under Title XVI of the Social Security Act, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below the undersigned recommends the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

In 2002, Plaintiff Christine Ann Bender ("Plaintiff" or "Bender") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 60). These applications were denied by the Social Security Administration on initial review and reconsideration. *See* (Tr. 48-60). Thereafter, a hearing was convened before Administrative Law Judge Stanley Hogg, who also denied Plaintiff's applications for benefits on November 16, 2005. (*Id.*). Plaintiff did not appeal this decision.

On October 25, 2007, Plaintiff re-applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 61-62, 107-117). Plaintiff's Disability Insurance benefits terminated on March 31, 2008. (Tr. 25). Bender alleged she became disabled on June 30, 2003, due to suffering from a host of impairments including Crohn's disease, depression, anxiety, a brain lesion, osteoarthritis and migraines. (Tr. 107, 129). The Social Security Administration denied her applications initially and upon reconsideration. (Tr. 61-64). Thereafter, Plaintiff requested a hearing to contest the denial of her applications for benefits. (Tr. 98-99).

On April 14, 2010, Administrative Law Judge Peter Beekman (the "ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 22-47). Plaintiff appeared with counsel and testified before the ALJ. (*Id.*). Medical expert, Dr. Herschel Goren, and vocational expert, Mr. Bruce Holdereed, also appeared at the proceeding and testified. (*Id.*). On June 23, 2010, the ALJ issued an unfavorable decision finding Bender was not entitled to benefits. (Tr. 8-16). In reaching his decision, the ALJ applied the five-step sequential analysis,[1] and concluded Bender

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

retained the ability to perform work which existed in significant numbers in the national economy. (*Id.*). Following the issuance of the ALJ's opinion, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 4). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Judicial review of the Commissioner's decision is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL & MEDICAL EVIDENCE[2]

Bender, born on March 12, 1970, was 40 years old on the date of her hearing before the ALJ. *See* (Tr. 61). Accordingly, under the Social Security regulations, Bender was classified as a "younger person" at all relevant times. *See* 20 C.F.R. § 416.963(c). Bender took special education classes throughout school and graduated in 1988. (Tr. 31-32). She has past experience working as a cashier-checker at a convenience store, a fast food worker, and as a housekeeper at a hotel. (Tr. 43-44).

---

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

[2] The Court's recitation of the medical evidence focuses on the records generated following the previous ALJ's decision dated November 16, 2005. That ALJ provided a lengthy discussion of Plaintiff's medical history through the date of his ruling and this portion of his opinion is herein incorporated by reference. (Tr. 50-53).

Plaintiff has a documented history of medical problems associated with carpal tunnel syndrome, organic brain disorder, diabetes, Crohn's disease, migraines and arthritis.  On August 30, 2006, Plaintiff underwent a neurologic evaluation by Dr. Selwyn-Lloyd McPherson.  (Tr. 328-32, 365-67).  Bender was referred to Dr. McPherson to address complaints of numbness in both of her hands.  (*Id*.).  Dr. McPherson diagnosed Plaintiff with bilateral carpal tunnel syndrome.  (Tr. 234).  On September 26, 2006, Bender underwent right carpal tunnel syndrome release surgery by Dr. Michael Pryce.  (Tr. 235).  During a neurological assessment on October 10, 2006, Dr. McPherson noted Bender still experienced hypesthesia – decreased sensibility—in three of her fingers on her right hand.  (Tr. 321).  However, later on that month, the doctor reported that Plaintiff was doing fine.  (Tr. 232).  Exactly one month after Plaintiff's right carpal tunnel syndrome release surgery, she underwent left carpal tunnel syndrome release surgery. (Tr. 233).   On October 18, 2007, Plaintiff presented back to Dr. McPherson for a neurologic/neuromuscular assessment.  (Tr. 309-11).  During the visit Bender reported she experienced "very little hand numbness".  (Tr. 310).

On June 5, 2007, Dr. Narendra Sahney performed a bone scan of Plaintiff's lower extremities.  (Tr. 252).  The doctor indicated the scan revealed "[a]rthritic changes involving both knees and the tarsals of both feet."  (*Id*.).  However, Dr. Sahney did not see evidence of any fracture.  (*Id*.).

On January 16, 2008, state agency psychologist, Dr. Frank Orosz, completed a "Psychiatric Review Technique" report evaluating Plaintiff's mental health.  (Tr. 369-82).  Dr. Orosz did not find Plaintiff to suffer from any severe mental impairment.  (Tr. 369).  He noted she suffered from major depression, but concluded that her "mental health [wa]s not severe . . . and should not cause her to have any severe limitations".  (Tr. 372, 381).  Dr. Orosz completed a

4

second "Psychiatric Review Technique" report on March 26, 2008.  (Tr. 395-408).  Again, he confirmed Plaintiff's diagnosis of major depression.  (Tr. 398).  However, in this report, Dr. Orosz opined Plaintiff suffered from moderate limitations in the mental functioning area of maintaining concentration, persistence and pace.  (Tr. 405).

On April 5, 2008, state agency physician, Dr. Nick Albert, completed a physical residual functional capacity ("RFC") assessment form evaluating Plaintiff's ability to perform basic work functions.  (Tr. 409-17).  Dr. Albert opined Bender retained the ability to lift up to 20 pounds occasionally and 10 pounds frequently.  (Tr. 410).  He also estimated Plaintiff could stand, walk or sit for roughly six hours each workday, and that she maintained an unlimited ability to push and pull.  (*Id.*).  The doctor indicated Bender required no postural, visual, communicative or environmental limitations; however, he noted Plaintiff only retained a limited ability to perform fingering (fine manipulation) and feeling (skin receptors).  (Tr. 411-13). Additionally, Dr. Albert mentioned he did not adopt the prior ALJ's RFC because Plaintiff's file had changed since the time of the ALJ's decision.  (Tr. 410).

On December 22, 2008, Bender presented to Robinson Memorial Hospital complaining of numbness from the top of her head all the way down through her face, breasts, hips, arms and legs.  (Tr. 510-12).  Plaintiff also complained of a slight headache which she rated as a four on a scale of one to ten.  (Tr. 510).  Doctors administered Bender Tylenol for her headache and pain. (Tr. 511).  When she was reassessed afterward, Bender reported her headache had decreased to a zero rating.  (*Id.*).  A CT scan was also performed on Plaintiff.  (*Id.*).  Upon comparison, the doctors noted "no significant interval change" between this CT scan and a prior CT scan performed on October 1, 2008.  (Tr. 513).   However, they noted a "[f]ocal area of encephalomalacia involving [Plaintiff's] left frontal pole with associated ex vacuo dilation of the

5

frontal horn of the left lateral ventricle." (*Id*.). Plaintiff was not admitted to the hospital and was advised to follow up with her doctor the next day. (Tr. 511).

On September 1, 2009, Plaintiff presented again to the emergency room complaining of a migraine headache. (Tr. 519-21). Bender reported feeling nauseated and rated her pain as a ten on a scale of one to ten. (Tr. 519). She described the pain as "radiating from the front of her head [creating] a squeezing sensation over the top of her head into the left side of her neck." (Tr. 520). A CT scan was performed, but the results showed no interval change from her prior CT scan performed in December 2008. (Tr. 521). Plaintiff was diagnosed with "acute cephalgia with concern for a migraine" and given pain medication. (*Id*.). Bender later reported her pain had subsided to a level two or three on a scale to ten. (*Id*.). She indicated she felt good and wanted to go home. (*Id*.).

### III. MEDICAL EXPERT TESTIMONY

Dr. Herschel Goren testified as the medical expert (the "ME") during the administrative hearing. (Tr. 38-43). Dr. Goren testified Plaintiff suffered from organic brain disorder and depressive disorder, (Tr. 39), and that these conditions would limit Plaintiff's work to non-complex tasks, meaning simple one and two step tasks, with no high production quotas. (Tr. 41). However, the ME did not find Bender to suffer from any physical impairment. (*Id*.). The ME acknowledged Plaintiff's reported diagnoses of diabetes, Crohn's disease, arthritis of the knee, carpal tunnel syndrome, hearing loss in the left ear and torticollis. (Tr. 39-41). Yet, he did not indicate these impairments placed any restrictions on Plaintiff's ability to work. (*Id*.).

### IV. ALJ'S DECISION

The ALJ made the following relevant findings of fact and conclusions of law. To begin, the ALJ noted he was obligated to consider the ruling in *Drummond v. Commissioner of Social*

*Security*, 126 F.3d 837 (6th Cir. 1997) because the Commissioner had previously denied Plaintiff's applications for benefits. (Tr. 8). The ALJ explained *Drummond* was significant, because in it the Sixth Circuit "stated that the doctrine of *res judicata* was applicable to administrative proceedings" and prevented the Commissioner from reaching a different result in a "second proceeding based upon evidence that had already been weighed in an earlier proceeding." (*Id.*) (emphasis in original). In accordance with the ruling in *Drummond*, the ALJ held that the prior ALJ's ruling governed Bender's request for benefits for the time period between her alleged onset date of June 30, 2003 and the date of the prior ALJ's decision, November 16, 2005, because the prior ALJ had already adjudicated Plaintiff's request covering this time frame. (Tr. 9). As a result, the ALJ concluded that November 17, 2005, was the earliest possible onset date on which he could determine Plaintiff was disabled. (*Id.*). The ALJ also stressed that the prior ALJ's RFC finding would apply to Bender's current request for benefits after November 17, 2005, unless the ALJ found that the record contained new and material evidence supporting a different finding. (*Id.*). The ALJ then proceeded through each of the five steps recognized in disability claims to determine whether Bender had established disability anytime on or after November 17, 2005.

At step one, the ALJ found Bender had not engaged in substantial gainful activity since November 17, 2005. (Tr. 11). At step two, the ALJ ruled Plaintiff suffered from three severe impairments: organic brain disorder, depressive disorder (not otherwise specified) and non-insulin dependent diabetes mellitus. (*Id.*). At the next step, the ALJ concluded none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-12). Before moving to step four, the ALJ assessed Bender's residual functional capacity to work. (Tr. 12-14). The ALJ determined

Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 12). However, the ALJ restricted Plaintiff to simple, routine low stress work (i.e. "no production quotas or piece rate work") with only limited interaction with the general public and supervisors. (*Id.*). Then, at step four, it was determined that Bender could not return to any of her past positions. (Tr. 15). Notwithstanding, given Plaintiff's age, educational background, work experience and RFC as set forth, the ALJ utilized the Medical-Vocational Guidelines as a framework to determine that there were jobs existing in substantial numbers in the national economy which Plaintiff could perform. (Tr. 15).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII.  ANALYSIS

Plaintiff objects to the Commissioner's decision based upon one overarching argument. Bender contends the ALJ committed reversible error by applying the ruling in *Drummond* to Plaintiff's current request for benefits from November 17, 2005 forward, despite new and material evidence showing that her symptoms had worsened.

### A. *Drummond* Standard

Prior final decisions of the Commissioner which were not appealed are binding upon the claimant and the Commissioner. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). In *Drummond*, the Sixth Circuit held that the Commissioner is bound by its prior findings with regard to a claimant's disability application unless new evidence or changed circumstances

require a different finding. *Id*. at 842; AR 98-4(6), 1998 WL 283902, at *2-3. Social Security Acquiescence Ruling 98-4(6) therefore mandates that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3.

It is the claimant's burden to present evidence showing that her symptoms have changed since the time of the Commissioner's prior determination obviating the application of the ruling in *Drummond*. *Casey*, 987 F.2d at 1232-33. "Plaintiff must not merely present new and material evidence, but that evidence must show that plaintiff's condition *deteriorated* from the state of her condition at the time the ALJ made the decision." *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 WL 4502988, at *8 (E.D.Mich. July 12, 2011) (emphasis in original) (*citing Casey*, 987 F.2d at 1232-33), *R&R adopted*, 2011 WL 4502955. Thus, a prior ALJ's ruling that a claimant is capable of working is binding upon a subsequent ALJ unless the claimant can show that her symptoms have worsened since the time of the prior decision. The Ninth Circuit, in agreement with the Sixth Circuit, refers to this standard as the "presumption of continuing non-disability". *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

B. ALJ Did Not Apply *Drummond* Ruling To Plaintiff's Claim After November 17, 2005

Plaintiff maintains the ALJ erred by applying the ruling in *Drummond* to her request for benefits since her presumed disability onset date of November 17, 2005. Bender claims the ALJ was not bound by the RFC articulated by the former ALJ because the record now contained new and material evidence, namely evidence relating to her carpal tunnel syndrome, migraine

10

headaches and arthritis, which permitted the present ALJ to re-assess her RFC. The implication made by Plaintiff is that the ALJ ignored this new and material evidence, and instead, merely adopted the previously determined RFC finding rendered by the prior ALJ.

Contrary to Plaintiff's contention, the ALJ did not apply the ruling in *Drummond* to Plaintiff's request for benefits for the time period of November 17, 2005 through June 23, 2010, the date of the ALJ's decision. Early in his opinion, the ALJ explained that the principles of *res judicata* governed his review of Plaintiff's request for benefits for the time period of June 30, 2003 through November 16, 2005, because the previous ALJ had already determined that Plaintiff was not disabled during this time – a finding which Plaintiff does not dispute. However, the ALJ added that the RFC from the prior decision *would* also apply to Bender's request for benefits for the time period beginning November 17, 2005, *unless* there was new and material evidence prompting a different finding.

But, in fact, the ALJ found the record included such new and material evidence. Later in his opinion, the ALJ ruled:

> The record contains a substantial amount of medical evidence, some of it material, pertaining to the time period after November 17, 2005. Based on this evidence, discussed below, I find that Ms. Bender is more limited than she was at the time of the prior ALJ's decision. However, I also find that there are still jobs in significant numbers existing in the local, state and national economies that Ms. Bender could perform.
>
> The RFC described above is *almost* identical to that of the prior RFC. I have added one additional restriction based upon an increase in the severity of Ms. Bender's depression. She is limited to low stress work, meaning no high production quotas or piece rate work. Evidence for this additional limitation is found in Exhibits B18F, B20F and B21F.

(Tr. 14) (emphasis added). Accordingly, Plaintiff's contention that the ALJ ignored the new evidence in the record and nonetheless utilized the RFC announced by the prior ALJ, is a

misstatement of the record.  The ALJ acknowledged the new evidence in the record and issued a new determination of Plaintiff's RFC.  Though the new RFC finding was admittedly similar to the prior ALJ's RFC finding, the resemblance between the two findings does not negate that the current RFC was based on the ALJ's independent review of the record.  *See McCracken v. Comm'r of Soc. Sec.*, No. 1:08-CV-327, 2009 WL 2983049, at *10 (S.D.Ohio Sept. 14, 2009).  Notably, the new RFC finding contained an additional restriction due to an exacerbation of Bender's depression.  Thus, the only question remaining is whether the ALJ's RFC is supported by the record.

### C.  Substantial Evidence Supports ALJ's RFC Finding

Though Plaintiff's challenge of the ALJ's decision was based on the mistaken belief that the ALJ applied the holding of *Drummond* to her request for benefits covering the period after November 17, 2005, the Court will still address Plaintiff's arguments regarding the new evidence which she alleges the ALJ's RFC failed to account for.  Bender argues the ALJ's RFC finding did not properly incorporate Plaintiff's new impairments of carpal tunnel syndrome, migraine headaches, or the arthritic changes in her knees and feet.  Though the ALJ did not label any of these impairments as severe at step two of the sequential analysis, his opinion and RFC finding sufficiently accounted for these impairments.

The ALJ concluded Bender's bilateral carpal tunnel syndrome did not place any limitations on Plaintiff's ability to work.  State agency physician, Dr. Albert, was the only doctor who placed restrictions on Plaintiff's ability to manipulate objects.  The ALJ assigned significant weight to all of Dr. Albert's findings, save the manipulative limitations he outlined for Bender.  The ALJ explained the objective medical evidence did not support these restrictions.  The record supports the ALJ's finding.  Although Plaintiff still complained of some sensory loss in her right

hand following surgery, weeks later she reported to her doctor that she was doing fine. The record does not contain any other evidence showing that Bender experienced problems with her hands.

Furthermore, the ME's testimony supports the ALJ's conclusion. Upon the ME's review of the record, he noted Bender's surgeries were successful and that there were no records indicating any legitimate concerns to prompt Plaintiff's doctors to conduct further electromyogram testing. Although the ALJ gave little weight to the ME's overall conclusion that Plaintiff had *no* severe physical impairments, it is apparent that the ALJ credited the finding with respect to the status of Plaintiff's bilateral carpal tunnel syndrome. The ALJ's agreement is demonstrated by his rejection of the manipulative restrictions announced by Dr. Albert and his omission of this condition from his step two finding naming those conditions which he found to be severe impairments.

In her brief, Plaintiff contends she complained to Dr. McPherson in November 2006 about numbness in her hands. (Pl.'s Br. at 10). Plaintiff alleged this complaint was documented in Dr. McPherson's records listed at page 241 of the transcript. However, this page of the transcript does not support Plaintiff's contention. Instead page 241 of the transcript reflects an emergency room report from Robinson Memorial Hospital documenting care Plaintiff received on February 5, 2006 from Dr. Roxanne Sukol. (Tr. 241-42). On that date, Bender presented to the hospital complaining of right-sided chest pain. (*Id.*). Accordingly, this record does not undermine the ALJ's RFC assessment.

Plaintiff's argument that the ALJ failed to consider her history of migraine headaches is also without merit. The ALJ acknowledged Plaintiff's claims of migraine headaches during his discussion of his RFC determination. Yet, Plaintiff's noted problems with migraine headaches

did not warrant further restrictions beyond those announced by the ALJ. The only evidence upon which Bender relies to demonstrate her migraines were disabling are records from the emergency room of Robinson Memorial Hospital where CT scans were performed and her testimony during the hearing in which she claimed to suffer three to four migraines each month. Plaintiff's initial CT scan revealed encephalomalacia in Plaintiff's left frontal pole, and the subsequent CT scans showed no significant interval changes. But, as the Commissioner duly noted, Plaintiff failed to show where any doctor imposed restrictions on her ability to work due to her migraine headaches. Thus, Plaintiff's diagnosis with encephalomalacia alone did not deem her disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Given the ALJ's negative view of the credibility of her statements, Plaintiff needed to show some objective evidence illustrating the limitations her migraines imposed. *See id*. Without such, it was reasonable for the ALJ to decline to name this condition as a severe impairment or to impose further restrictions due to this impairment. *Id.*

    Neither is there merit to Plaintiff's attack of the ALJ's decision on the grounds that the ALJ disregarded evidence of arthritic changes in her knees and feet. Plaintiff claims the ALJ did not consider her complaints of pain in her lower extremities. Plaintiff's argument is premised on a medical record which documents the results of a bone scan on Plaintiff's lower extremities which revealed arthritic changes in both of Plaintiff's knees and the tarsals of both of Plaintiff's feet. But, again, Plaintiff did not supply any medical opinion evidence suggesting that these arthritic changes impeded her from working. In fact, to the contrary, Dr. Albert, whose findings the ALJ gave significant weight, opined Bender could stand, walk and sit for six hours each day despite her arthritic problems. The ALJ incorporated this portion of Dr. Albert's opinion into his RFC determination. As a result, Plaintiff's argument that the ALJ ignored her arthritic problems

is unavailing. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (finding ALJ properly accounted for impairment because his ruling was based on the opinions of physicians who explicitly considered impairment in their recommended RFCs).

### C. Plaintiff's Reply Brief

The undersigned declines to entertain the arguments presented by Plaintiff in her reply brief for two independent reasons. First, Plaintiff's brief was untimely filed without leave of the Court. Plaintiff's counsel's dilatory conduct was previously addressed by the Court. Earlier in the case, the Court ordered Plaintiff to show cause why it should not recommend dismissal of the case for Plaintiff's failure to timely file her Brief On The Merits. (Doc. 13). Plaintiff subsequently filed her brief, but failed to respond to the Court's request to explain why it should accept her untimely brief. (Docs. 14-16). Plaintiff then alleged the delay was caused by counsel's "lack of understanding of Court requirements for conversion of documents to a text-based PDF". (Doc. 17 at p. 2). The Court credited counsel's explanation and accepted Plaintiff's brief. (Doc. 18).

Pursuant to the Court's Initial Order, (Doc. 5), Plaintiff was entitled to file a reply brief responding to the Commissioner's arguments. The order directed Plaintiff to file the reply brief within 15 days of the filing of the Commissioner's brief. (Doc. 5). Accordingly, Plaintiff's reply brief should have been filed by March 27, 2012, 15 days after the Commissioner's brief was filed. *See* (Doc. 21). Instead, Plaintiff requested, and the Court granted, Plaintiff three additional extensions of time in which to file her reply brief. (Docs. 23-25). The third and final extension granted Plaintiff leave to file her brief no later than April 16, 2012. Nevertheless, Plaintiff did not file her reply brief until April 17, 2012, a day after the Court's extended deadline. Thus, Plaintiff's brief is not properly before the Court.

It is also inappropriate for the undersigned to consider the arguments raised in Plaintiff's reply brief because they have been waived. It is well-established that a party should not raise new arguments in a reply brief. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). A reply brief provides a plaintiff the opportunity to respond to arguments raised for the first time in the defendant's brief. But, the plaintiff cannot wait until its reply brief to assert new arguments because such a practice would effectively deprive the defendant of the opportunity to expose weaknesses in the plaintiff's arguments. *Id*. "These waiver and forfeiture rules ensure fair and evenhanded litigation by requiring parties to disclose legal theories early enough in the case to give an opposing party time not only to respond but also to develop an adequate factual record supporting their side of the dispute." *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009). District courts in this circuit have applied this doctrine in Social Security cases. *E.g. Caley v. Astrue*, No. 5:11-CV-1146, 2012 WL 1970250, at *15, n. 11 (N.D.Ohio June 1, 2012) (Vecchiarelli, J.); *Hamilton v. Comm'r of Soc. Sec.*, No. 1:09-CV-260, 2010 WL 1032646, at *6 (N.D.Ohio Mar. 17, 2010) (White, J.); *Johnson v. Comm'r of Soc. Sec.*, No. 1:09-CV-967, 2011 WL 4954049, at * 11 (W.D.Mich. Sept. 22, 2011).

In the instant case, Plaintiff's reply brief asserts new attacks on the ALJ's failure to: 1) properly account for Plaintiff's Crohn's disease and its accompanying symptoms and limitations alleged by Bender; 2) address Plaintiff's statement that she was unable to obtain medication for this condition because she did not have medical insurance; and 3) provide adequate reasons for discounting Plaintiff's credibility. None of these arguments were presented in Plaintiff's initial brief. Instead, the initial brief challenged the ALJ's application of the *Drummond* standard and focused on the ALJ's failure to account for Plaintiff's bilateral carpal tunnel syndrome, migraines and arthritis. The assignments of error presented in the reply brief are not

16

substantially the same as those raised in the initial brief to apprise the Commissioner of Plaintiff's position in the case and give it an opportunity to expose weaknesses in these arguments.  Therefore, these arguments are considered new.  Plaintiff forfeited her chance to assert these arguments when she omitted them from her initial brief.

The reply brief also contains arguments relating to Plaintiff's carpal tunnel syndrome and the Commissioner's reliance upon the ME's testimony to support the ALJ's ruling with respect to this condition.  These arguments are properly included in Plaintiff's reply brief because they pertain to issues Plaintiff presented in her initial brief and/or are responsive to arguments set forth by the Commissioner.  Thus, the Court addressed these concerns in its analysis above.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  August 17, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of the mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).